## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

KAREN BACKUES KEIL,              )
                                 )
    **Plaintiff,**               )
**v.**                           )
                                 )
MHM SERVICES, INC.,              )
    a Virginia Corporation,      )
JOHN DUNN,                       )
JOHN OR JANE DOE #1,             )   Case no.
EDWARD BEARDEN,                  )
VEVIA STURM,                     )   JURY TRIAL DEMANDED
JOHN OR JANE DOE #2, and         )
JOHN OR JANE DOE #3,             )
    All named individuals in their )
    Individual Capacities,       )
                                 )
    **Defendants.**              )

## COMPLAINT

Plaintiff, by her attorneys, as and for her Complaint, hereinafter states and alleges as follows:

## PRELIMINARY STATEMENT

1.   Plaintiff was harassed, abused and raped by Corrections Officer Edward Bearden while confined at the Chillicothe Correctional Institution. She reported this abuse to her mental health counselor, John Dunn, and was subsequently threatened, abused and sexually assaulted by Defendant Dunn. Plaintiff has suffered severe physical and emotional trauma due the actions of all Defendants.

2.   Plaintiff brings this action pursuant to 42 U.S.C §1983, seeking

1

compensatory damages and punitive damages against all Defendants for violations of her constitutional rights while acting under color of law, together with reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988.

3.  Plaintiff asserts supplemental Missouri state law claims against Defendant John Dunn, John or Jane Doe #1, and Defendant MHM Services, Inc.

## JURISDICTION AND VENUE

4.  Jurisdiction of the Court is properly invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforementioned statutory provisions.

5.  This Court has supplemental jurisdiction over claims which arise under Missouri law.

6.  Plaintiff's claim for attorney's fees and costs is authorized by 42 U.S.C. §1988.

7.  Venue is proper pursuant to 28 U.S.C. §1391(b)(2). All actions alleged herein occurred in the Western District of Missouri.

## PARTIES

8.  Plaintiff Karen Backues Keil (hereinafter "Plaintiff") was at all relevant times an inmate of the Chillicothe Correctional Center, a facility of the State of Missouri Department of Corrections.

2

9.  Defendant MHM Services, Inc.  (hereinafter "MHM" or "Defendant MHM") is a corporation organized and existing by virtue of the laws of the State of Virginia, with its principal executive office in Virginia.  MHM is authorized to and transacts business in the State of Missouri.  Pursuant to a contract with the State of Missouri, MHM was the provider of mental health services for the D.O.C. for several years, until sometime in late 2014.

10. Defendant John Dunn (hereinafter "Dunn" or "Defendant Dunn") was at all relevant times a mental health professional employed by MHM and was assigned, in this capacity, to the Chillicothe Correctional Center.  Defendant Dunn is sued in his individual capacity.

11.  Defendant John or Jane Doe #1 is the Supervisor of John Dunn.  John or Jane Doe #1 is sued in his or her individual capacity.

12.  Defendant Edward Bearden (hereinafter "Bearden" or "Defendant Bearden") was at all relevant times a Correctional Officer at the Chillicothe Correctional Center.  He is still employed at the prison.  Defendant Bearden is sued in his individual capacity.

13. Defendant Vevia Sturm is the Prison Rape Elimination Act supervisor for the Missouri Department of Corrections.  She is sued in her individual capacity.

14. Defendant John or Jane Doe #2 is the individual responsible for

implementation of the Prison Rape Elimination Act at the Chillicothe Correctional Center. He or she is sued in his or her individual capacity.

15. Defendant John or Jane Doe #3 is the Supervisor of Edward Bearden. He or she is sued in his or her individual capacity.

## FACTS

16. Plaintiff was sentenced to the Missouri Department of Corrections for 15 years for the offenses of stealing and forgery.

17. Plaintiff was initially placed at the women's prison in Vandalia on June 15, 2011, and then transferred to the Chillicothe Correctional Center on July 19, 2011.

18. Plaintiff was released from the Chillicothe Correctional Center after almost six years of imprisonment, on February 1, 2017.

### A. SEXUAL MISCONDUCT BY DEFENDANT BEARDEN

19. Defendant Bearden's first physical contact with Plaintiff was in the summer of 2011, shortly after she arrived at the Chillicothe Correctional Center. Defendant Bearden approached Plaintiff and conducted what ostensibly was a stop-and-frisk, or pat down.

20. Bearden had earned a reputation with the inmates, and was often

referred to by the women as the "resident pervert at camp."

21. Bearden began to regularly frisk Plaintiff at various locations when he saw her, in a manner which was inappropriate, unwanted, and uncomfortable for Plaintiff. Bearden groped Plaintiff's breasts and buttocks while frisking her, and whispered unwanted comments of a sexual nature in her ear, often commenting on her body and appearance.

22. Cross-gender pat downs were common occurrences at the Chillicothe Correctional Center prior to the facility's implementation of the Prison Rape Elimination Act.

23. Defendant Bearden's more forceful sexual assaults of Plaintiff began in or around June 2012, in the prison laundry room. Defendant Bearden ordered Plaintiff to go to the laundry room with him. While there, he pushed her up against a wall, pushed his hand down her pants, and put his finger into her vagina. He also inserted his tongue into her mouth.

24. Plaintiff was physically and emotionally injured from this attack. She was visibly shaking. Defendant Bearden told Plaintiff he did not mean to hurt her. He then told Plaintiff that he loved her.

25. The following day, Defendant Bearden approached Plaintiff and observed a bruise on her arm. He asked Plaintiff, "Is that from me?" Plaintiff responded affirmatively.

5

26.  Defendant Bearden attacked Plaintiff in the laundry room on multiple occasions.  On one of these occasions,  Plaintiff again was forced against a wall while Defendant Bearden pushed his hands down her pants and inserted his fingers into her vagina, and attempted to push his other hand up her shirt and under her bra.

27.  Several months later, on or about late December of 2013, Plaintiff was cited for a violation for sleeping through the count of offenders which takes place several times a day at the prison.

28.  Plaintiff suffered a reprimand for sleeping through the count,  and as a result had her television moved into an on-site storage room. On or about late January of 2014, Plaintiff was sent to retrieve her television. Defendant Bearden accompanied her to the storage room. At this time, in January of 2014, Bearden forcibly raped Plaintiff in the storage room.

29.  While in the storage room, Bearden came up behind Plaintiff, forced her to lean over a table, partially removed her clothes and his, and inserted his penis into her vagina against her will. Bearden ejaculated into a towel.

30.  After raping her, Defendant Bearden told Plaintiff to take a shower and ensured she did so.

31.  In explaining his conduct, Bearden told Plaintiff, "I wanted to show you how much I love you."

32. Defendant Bearden also took the opportunity to attack Plaintiff when he accompanied Plaintiff to retrieve the property of other offenders. Plaintiff's roommate at the prison suffered from seizures, which required occasional hospitalizations for extended periods of time. During hospitalizations, Plaintiff's roommate's belongings were placed into the storage room.

33. Plaintiff was forced to aid in moving those items in and out of the storage room, as well as items of other offenders other than her roommate, and Bearden accompanied Plaintiff and raped her each time she would have to go to the storage room.

34. Rapes of this same nature by Bearden occurred from 2012 to 2015. Upon information and belief, Bearden raped Plaintiff more than 20 times between the fall of 2012 and late December of 2015.

35. Defendant Bearden used the laundry room and the storage room for his attacks as he knew they did not have surveillance cameras that covered the entire space.

36. Plaintiff was physically and emotionally injured by each rape by Bearden, which resulted in pain to her vagina, and acute pain while urinating, for about a week after each sexual assault.

37. Upon information and belief, Bearden raped Plaintiff at least once in 2015.

38. On multiple occasions from 2012 to 2016, Defendant rubbed his penis against Plaintiff through his clothing.

39. On multiple occasions from 2011 to 2014, Defendant Bearden engaged in unnecessary and unscheduled frisks or pat downs of Plaintiff, touching her inappropriately and for extended periods of time that were for Bearden's sexual gratification.

40. From 2012 until she left the Chillicothe Correctional Center, Bearden would stare at Plaintiff during showers, or would attempt to find her during her shower times to watch her.

41. On multiple occasions from 2012 to 2014, Bearden would say he had "a hard on" for Plaintiff, and make gestures with his legs in conjunction with these statements.

42. On the occasions when Plaintiff was transferred to a different section of the prison, Bearden became upset. In 2016, Bearden found it increasingly difficult to locate Plaintiff alone and often expressed his desire to see her to her roommates and other inmates.

43. Bearden regularly asked other inmates about Plaintiff, drawing attention to his inappropriate desire to see Plaintiff. Other inmates often told Plaintiff, "That man's got something for you," when referring to Bearden. He also mailed her a card from outside the prison expressing his feelings for her.

44. In 2016, Bearden managed to find Plaintiff alone in the office at the gym located on the prison campus. In the office, Bearden rubbed his penis against Plaintiff's body. Bearden also located himself in the recreation department where Plaintiff worked so he could see Plaintiff when she came to work while no one else was there. He would rub against her, and say sexually explicit things to her. He also attempted to be assigned to the recreation area so he could be close to Plaintiff.

45. All of these actions were without the consent of Plaintiff, were unwanted and unwelcome, and caused her serious emotional and physical harm.

46. Plaintiff suffered nightmares and often wet the bed as a result of the vicious and cruel sexual assaults by Bearden, causing Plaintiff pain, embarrassment, and suffering during her incarceration at Chillicothe Correctional Center.

47. Defendant Bearden also attempted to locate Plaintiff after her release from prison, asking inmates about her marital status and inquiring where she might be working and located after her release. Defendant Bearden learned of one of the places where Plaintiff worked after her release. Upon information and belief, these inquiries and continue to the present day.

48. Upon information and belief, Defendant Bearden continues to work for

Chillicothe Correctional Center as a Correctional Officer. All his actions were done under color of state law.

49. Upon information and belief, Defendants Vevia Sturm, and John or Jane Doe #2 and John or Jane Doe #3 knew or should have known that Defendant Bearden was sexually assaulting Plaintiff. It was their duty to discover and prevent sexual assaults of offenders at all Missouri penal institutions. All of their actions were done under color of state law.

## B. SEXUAL MISCONDUCT BY DEFENDANT JOHN DUNN

50. Plaintiff sought counseling within the Chillicothe Correctional Center for the mental anguish and pain she suffered from the sexual abuse she was subjected to on a regular basis from Defendant Bearden.

51. Plaintiff was assigned Defendant John Dunn (hereinafter "Dunn") as a therapist on or about December of 2012.

52. Dunn's full time employment was to provide mental health services at the Chillicothe Correctional Center. He was employed by MHM Services, a company which had entered a contract with the Missouri Department of Corrections to provide all of the mental health care at Missouri's prisons.

53. Correctional Officers print "slips" for each inmate to attend

appointments within the Chillicothe Correctional Center. The Correctional Officers deliver these slips to the offender's room in the evening before the appointment. Correctional Officers then ensure offenders go to their appointments. Correctional Officers write up or punish prisoners for missing appointments.

54. Plaintiff saw Defendant Dunn on nearly a weekly basis for counseling sessions. These sessions often involved discussion of past sexual assaults suffered by Plaintiff which have caused her emotional distress.

55. To get to her counseling sessions with Dunn, Plaintiff entered several locked doors to get into the mental health facility and was signed in and out of her counseling sessions by Correctional Officers.

56. Dunn was not allowed to close the door to his office during counseling sessions, but left it open a crack which only exposed parts of the wall to the outside, making it nearly impossible to see what was happening inside his office.

57. Shortly after a month into therapy, on or around January or February 2013, Plaintiff confided in Dunn about the sexual abuse she was subjected to by Defendant Bearden. During this therapy session, Dunn began to hug and touch Plaintiff, by stroking her arms and lower back. Dunn indicated he was trying to "help" Plaintiff with regard to the abuse suffered at the hands of Bearden.

58. These actions were unwanted and caused Plaintiff emotional harm.

59. Dunn did not record any mention of Bearden, Correctional Officers, or DOC employees in his therapy notes for Plaintiff. Instead, Dunn warned Plaintiff that reporting the incidents would likely send her to "the hole," which is the term for solitary confinement, a form of punishment for prisoners which deprives them of various privileges, including freedom to move within the prison and visits from family.

60. With each following therapy session, Plaintiff was subjected to increasingly alarming, unwanted, and inappropriate sexual advances by Dunn.

61. In March of 2013, Dunn told Plaintiff he had feelings for her and that he loved her.

62. By the end of April or beginning of May, 2013, Dunn routinely forcibly kissed Plaintiff, placed his hands down Plaintiff's pants and touched her vagina with his fingers, forcibly placed Plaintiff's hands on his clothing at his penis, and forcibly placed his hands underneath Plaintiff's bra, under her shirt, to feel her breasts. This was done without Plaintiff's consent.

63. Defendant Dunn explained that his actions were because he loved Plaintiff.

64. Defendant Dunn, in his attacks on Plaintiff, would refer to the actions of

Defendant Bearden, and while Defendant Dunn sexually assaulted her, would ask, "Did Bearden do it like this?" Defendant Dunn told Plaintiff to re-enact what Defendant Bearden had done to her.

65. Around August of 2013, Dunn unzipped his pants and revealed his penis to Plaintiff, insinuating he wanted her to engage in oral sex with him. Plaintiff turned her head and refused.

66. While forcing Plaintiff to touch his erect penis over his clothes, Dunn regularly made statements such as, "Look what you have done to me."

67. While forcing his hands down Plaintiff's pants or under Plaintiff's bra, Dunn regularly told Plaintiff his actions were because he wanted to "show [her] what real love is."

68. Plaintiff co-facilitated several courses with Dunn. Plaintiff helped teach classes on "dealing with feelings, and "life after release." Dunn used "planning sessions" before these courses as opportunities to see Plaintiff multiple times per week and assault Plaintiff.

69. Dunn continued to sexually assault Plaintiff until the end of October, 2013. At no time did Plaintiff consent to any sexual assault, or sexual contact of any kind with Dunn.

70. Defendant Dunn ordered Plaintiff to memorize his cell phone number so that she could call him after she was released.

71.  Upon information and belief, at the end of October 2013, several months into co-facilitating Defendant Dunn's mental health classes, Plaintiff received a letter from MHM, indicating that she was no longer allowed to teach with Dunn or see him for counseling.  Medical records from MHM confirm that it knew there was improper conduct being conducted by Dunn with the Plaintiff.

72.  Upon information and belief, Defendant MHM was aware that Defendant Dunn was acting inappropriately with offenders, because MHM notified Plaintiff in the letter referred to above that it was aware of  the "familiarity" between Mr. Dunn and Plaintiff,  and that she was no longer to have any contact with Defendant Dunn.

73.  At the end of October, 2013, the counseling sessions by Dunn abruptly ended.  Subsequently, Defendant Dunn directed Plaintiff to write a letter to his superior, in an apparent attempt to avoid being investigated or disciplined for his conduct.

74. Although the treatment ended, Dunn continued to ask other offenders about Plaintiff.  He would routinely wait for her on lunch breaks or at the end of the day to try to see her and talk with her.

75. Defendant Dunn also contacted Plaintiff's daughter, after Plaintiff was

released from the Chillicothe Correctional Center, calling her once in March of 2017 and again a week later. Dunn had no legitimate reason to be contacting Plaintiff or her family.

76. Defendant Dunn is no longer employed at the prison.

77. John or Jane Doe #1 was the supervisor of John Dunn. John or Jane Doe #1 knew or should have known that Defendant Dunn was sexually assaulting Plaintiff. It was his or her duty to discover and prevent sexual assaults of patients of MHM. All of his or her actions were done under color of state law.

78. All actions of MHM were done under the color of state law.

## SECTION 1983 CLAIMS

### COUNT I - DEFENDANT BEARDEN'S SEXUAL MISCONDUCT VIOLATED THE 8TH AMENDMENT
### (AGAINST DEFENDANT BEARDEN)

79. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 78 above as fully set forth herein.

80. Defendant Bearden, at all relevant times, acted under color of state law.

81. The acts and conduct of Defendant Bearden were calculated to and did deprive Plaintiff of her clearly established right to be free from cruel and unusual punishment in the form of violent bodily intrusion.

82. As a direct and proximate result of the acts and conduct of

Case 5:18-cv-06074-BP   Document 1   Filed 05/29/18   Page 15 of 27

Defendant Bearden, Plaintiff suffered serious bodily pain, injury, and emotional distress.

83.  The acts and conduct of Defendant Bearden were committed unlawfully, intentionally, and with malice or reckless disregard for the rights of Plaintiff.

## COUNT II   THE FACILITATION BY STURM AND DOES #2 AND #3  OF DEFENDANT BEARDEN'S SEXUAL MISCONDUCT VIOLATED THE 8TH AMENDMENT (AGAINST STURM AND JOHN OR JANE DOE #2 AND JOHN OR JANE DOE #3)

84. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 83 above as fully set forth herein.

85.  At all relevant times, Sturm and Does #2 and #3 were acting under color of state law.

86. At all relevant times, Sturm and Does #2 and #3 were performing governmental functions.

87.  Defendants Sturm and Does #2 and #3 were responsible for the prevention of sexual violence against offenders in Missouri's correctional facilities, and through their acts and omissions, facilitated the rape and sexual abuse of Plaintiff.

88. By their policies, practices, acts and omissions, Defendants Sturm and

Does #2 and #3 caused Plaintiff to be subjected to rape and other sexual abuse, in violation of her rights under the Eighth Amendment.

89. Upon information and belief, Defendants Sturm and Does #2 and #3 were specifically aware of widespread allegations of sexual misconduct at Missouri penal institutions.

90. Upon information and belief, Defendants Sturm and Does #2 and #3 were specifically aware of allegations of sexual misconduct by Defendant Bearden prior to and during the course of his abuse of Plaintiff.

91. Defendants Sturm and Does #2 and #3 knew that staff who rape and sexually abuse inmates routinely utilize physical areas outside the view of monitored security cameras and other staff.

92. Defendants Sturm and Does #2 and #3 failed to employ obvious measures to reduce the risk of rape and sexual abuse of incarcerated inmates by corrections officers and medical professionals.

93. The pattern of sexual abuse by prison staff and the failure or refusal of Defendants Sturm and Does #2 and #3 to operate, supervise, maintain and control its operations properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorized the abuse of Plaintiff.

94. The customs, policies, usages, practices, and procedures of Sturm and

Does #2 and #3 constituted deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff and were the direct and proximate cause of the constitutional violations suffered by the Plaintiff as alleged herein.

95. The customs, policies, usages, practices, and procedures of Sturm and Does #2 and #3 were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

96. Sturm and Does #2 and #3 failed to protect Plaintiff from known and dangerous harm.

97. Sturm and Does #2 and #3 knew of or consciously disregarded the obvious risk of the constitutional harms perpetrated against Plaintiff and failed to intervene, mitigate, or stop the events.

98. Due to Sturm and Does #2 and #3's practices and policies aforesaid, the Plaintiff suffered and continues to suffer physical, psychological and emotional injuries, pain and suffering.

## COUNT III – DEFENDANT DUNN'S SEXUAL MISCONDUCT VIOLATED THE 8TH AMENDMENT
## (AGAINST DEFENDANT DUNN)

99. Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 98 above as fully set forth herein.

100.    Defendants Dunn at all relevant times acted under color of state law.

Case 5:18-cv-06074-BP   Document 1   Filed 05/29/18   Page 18 of 27

101.     The acts and conduct of Defendant Dunn were calculated to and did deprive Plaintiff of her clearly established right to be free from cruel and unusual punishment in the form of violent bodily intrusion.

102.     As a direct and proximate result of the acts and conduct of Defendant Dunn, Plaintiff suffered serious bodily pain, injury, and emotional distress.

103.     The acts and conduct of Defendant Dunn were committed unlawfully, intentionally, and with malice or reckless disregard for the rights of Plaintiff.

**COUNT IV – DEFENDANT MHM's  AND JOHN OR JANE DOE #1's FACILITATION OF DEFENDANT DUNN'S SEXUAL MISCONDUCT VIOLATED THE 8TH AMENDMENT (AGAINST MHM AND JOHN OR JANE DOE #1)**

104.     Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 103 above as fully set forth herein.

105.     At all relevant times, MHM and Doe #1 were acting under color of state law.

106.     At all relevant times, MHM and Doe #1 were performing governmental functions.

107.     Defendant MHM, through its contract with the State of Missouri

19

Department of Corrections, was expressly responsible for the healthcare and physical and mental well-being of Plaintiff and, through its acts and omissions, facilitated the rape and sexual abuse of Plaintiff.

108.     By its policies, practices, acts and omissions, MHM and its employees, including Doe #1, caused Plaintiff to be subjected to rape and other sexual abuse, in violation of her rights under the Eighth Amendment.

109.     Defendant MHM's and Doe #1's s failure to institute adequate safeguards in their hiring and retention practices for employees constituted deliberate indifference to the safety and well-being of Plaintiff.

110.     Upon information and belief, Defendant MHM and Doe #1 were specifically aware of widespread allegations of sexual misconduct at Missouri penal institutions.

111.  Upon information and belief, MHM and Doe #1 were specifically aware of allegations of sexual misconduct by Defendant Dunn prior to and during the course of his abuse of Plaintiff.

112. MHM and Doe #1 knew that staff who rape and sexually abuse inmates routinely utilize physical areas outside the view of monitored security cameras and other staff.

113. MHM and Doe #1 failed to employ obvious measures to reduce the risk of

rape and sexual abuse of incarcerated inmates by corrections officers and medical professionals.

114.    The pattern of sexual abuse by prison staff and the failure or refusal of MHM and Doe #1 to operate, supervise, maintain and control its operations properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorized the abuse of Plaintiff.

115. The customs, policies, usages, practices, and procedures of MHM and Doe #1 constituted deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff and were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

116.    The customs, policies, usages, practices, and procedures of MHM and Doe #1 were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

117. MHM and Doe #1 failed to protect Plaintiff from known and dangerous harm.

118.    MHM and Doe #1  knew of or consciously disregarded the obvious risk of the constitutional harms perpetrated against Plaintiff and failed to intervene, mitigate, or stop the events.

119.    Due to MHM's and Doe #1's practices and policies aforesaid, the

Plaintiff suffered and continues to suffer physical, psychological and emotional injuries, pain and suffering.

## MISSOURI STATE LAW CLAIMS

### COUNT V – NEGLIGENT HIRING AND RETENTION: (AGAINST DEFENDANT MHM AND JOHN OR JANE DOE #1)

120.    Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 119 above as fully set forth herein.

121. Defendant MHM John or Jane Doe #1 had actual knowledge or should have known that sexual assault was an ongoing and serious problem in Missouri penal facilities.

122.    Defendant MHM  and Doe #1 had actual knowledge or should have known that Defendant Dunn behaved in a sexually inappropriate manner with inmates.

123.    Defendant MHM and Doe #1 were solely responsible for hiring and retaining Defendant Dunn.

124.     Defendant Dunn's repeated assaults against Plaintiff were foreseeable and consistent with Defendant Dunn's dangerous proclivities about which Defendants MHM and Doe #1 knew or should have known.

125.    Defendant MHM's and Doe #1's hiring and retention of Defendant Dunn was a proximate cause of Plaintiff's injuries.

## COUNT VI – COMMON LAW NEGLIGENCE
## (AGAINST DEFENDANTS MHM, DUNN AND JOHN OR JANE DOE #1)

126.  Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 125 above as fully set forth herein.

127.  Defendants MHM, Dunn, and John or Jane Doe #1 owed a duty of care to Plaintiff during those times she was in the care and control of Defendants.

128.  Defendants breached this duty of care to Plaintiff by failing to protect her from sexual abuse and harassment by Defendant Dunn.

129.  As a direct and proximate result of Defendants' breach, Plaintiff suffered physical injury and emotional distress.

## COUNT VII – NEGLIGENCE PER SE
## (AGAINST DEFENDANT JOHN DUNN)

130.  Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 129 above as fully set forth herein.

131.  By and through the enactment of Section 566.145 of the Missouri Revised Statutes, the State of Missouri has proscribed all sexual contact with incarcerated individuals by any staff working within a correctional facility.

132.  Plaintiff is a member of the class of individuals protected by Section 566.145.

133.  Defendant Dunn's actions violated the statute, directly and proximately resulting in injuries to Plaintiff of the exact nature intended to be prevented by the statute.

## COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AGAINST DEFENDANT JOHN DUNN)

134.  Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 133 above as fully set forth herein.

135.  In addition to repeated sexual assaults, Defendant John Dunn used his position of trust and control within the Chillicothe Correctional Institution to humiliate and degrade Plaintiff.  This extreme and outrageous conduct included utilizing overt threats that her disclosure of any misconduct could cause her to be placed in administrative segregation in order to force her to recount in detail past sexual trauma.

136. Defendant Dunn's conduct was intentional and his objective was to cause extreme emotional distress to Plaintiff.

137. Defendant Dunn's conduct was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

138.  Defendant Dunn's conduct caused severe emotional distress to Plaintiff and this emotional distress resulted in bodily harm.

## IX – VICARIOUS LIABILITY/RESPONDEAT SUPERIOR
## (AGAINST DEFENDANT MHM)

139.  Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 138 above as fully set forth herein.

140.  As to Counts III, VI, VII and VIII, Defendant MHM was the employer of Defendant Dunn, with the attendant right to control his actions in the scope of his employment.  Furthermore, the injuries caused by Defendant Dunn occurred within the scope of his employment.

141.  Defendant MHM is vicariously liable for Counts III, VI, VII and VIII.


## COUNT X – PREMISES LIABILITY
## (AGAINST DEFENDANT MHM)

142.  Plaintiff incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 141 above as fully set forth herein.

143.  Defendant MHM at all times relevant controlled the space in which Defendant Dunn met with Plaintiff.

144  Defendant MHM had an agreement with the Department of Corrections to exclusively occupy certain space at the Chillicothe Correctional Center for medical treatment.

145.   There existed a defective and dangerous condition at the prison in that the physical layout of the medical facilities were such that Defendant Dunn could

25

sexually assault Plaintiff out of the view of other MHM staff, out of the view of DOC staff, and out of the view of surveillance cameras.

146.  These defective and dangerous conditions created a condition through which Defendant Dunn was able to sexually assault Plaintiff without being discovered.

147.  Defendant MHM knew or by using ordinary care could have known of this condition.

148.  Defendant MHM failed to use ordinary care to eliminate this condition, and failed to use ordinary care to warn Plaintiff of the condition.

149.  Plaintiff was harmed and sustained damage as a result of these failures by Defendant MHM.

## JURY DEMAND

150.  Plaintiff hereby demands a trial by jury of all issues in this matter.

## RELIEF

151.  Plaintiff requests compensatory damages against all defendants in an amount to be determined at trial, punitive damages against all defendants in an amount to be determined at trial, attorney's fees, costs and disbursements pursuant to law, and such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ John J. Ammann
John J. Ammann, Mo. #34308
Brendan D. Roediger, #60585
Susan McGraugh, Mo. #37430
Saint Louis University Legal Clinic
100 North Tucker
St. Louis, Mo.  63101
314-977-2778 fax:  314-977-1180
john.ammann@slu.edu
brendan.roediger@slu.edu
susan.mcgraugh@slu.edu

Jenifer C. Snow, Mo. # 67345
Ryan J. Gavin, Mo. #48691
Kamykowski, Gavin & Smith, P.C.
222 S. Central, Suite 1100
St. Louis, Mo.  63105
314-665-3280 fax:  314-762-6721
Jenifer@kgslawfirm.com
Ryan@kgslawfirm.com