IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| KAREN BACKUES KEIL, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 18-06074-CV-SJ-BP |
| | ) |
| EDWARD BEARDEN, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY**

Pending is Defendant's Motion to Exclude the expert testimony of Drs. Dora Schriro and Melissa Piasecki. (Doc. 126.) As detailed below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This is one of several cases involving allegations that Defendant Edward Bearden and other employees of the Missouri Department of Corrections sexually assaulted female inmates of the Chillicothe Correctional Center. (*See generally* Doc. 1, ¶¶ 1, 8.) The case was initially consolidated with the other actions involving Bearden for purposes of discovery, (*see* Doc. 77); discovery has now completed, and this case is set for trial on January 31, 2022. (Doc. 113.)

The Plaintiff in this case, Karen Keil, alleges that she was an inmate at the Chillicothe Correctional Center between 2011 and 2017. (Doc. 1, ¶¶ 17–18.) During that time, according to the Complaint, Bearden—who was a Correctional Officer at the Center—routinely sexually assaulted and harassed her. (*Id*. at ¶¶ 23–24.) Plaintiff allegedly sought help and counseling with Defendant John Dunn, who was a mental health services employee at the Center. (*Id*. at ¶ 57.) Dunn then apparently began to sexually assault and harass Plaintiff as well. (*Id*. at ¶ 62.) Plaintiff

has brought claims against Bearden, Dunn, MHM Services, Inc. (which provides healthcare services for MDOC inmates and was Dunn's immediate employer), and other unnamed John and Jane Doe Defendants, alleging a variety of common-law and constitutional injuries. Plaintiff subsequently settled her claims against Dunn and MHM Services. (Docs. 72, 73.)[1]

Plaintiff has retained several experts to testify on her behalf. One of those experts is Dr. Dora Schriro, the former director of the Missouri Department of Corrections ("MDOC"). (Doc. 127-2, p. 1 (Dr. Schriro's report).) Dr. Schriro provided a report for Plaintiff offering five opinions about the case:

1. "Karen Backues Keil's reporting of staff-on-inmate sexual abuse by CO I Edward Bearden and LPC John Dunn during her incarceration at the Chillicothe Correctional Center is supported by the facts."

2. "CO I Edward Bearden had the means and opportunity to repeatedly sexually assault and harass Ms. Keil and he caused her to suffer physical and emotional injury."

3. "LPC John Dunn had the means and opportunity to repeatedly sexually assault and harass Ms. Keil and he caused her to suffer physical and emotional injury."

4. "The Missouri Department of Corrections and MHM Services, Inc., the Department's contract provider for offender health care [sic], failed to provide the protection owed Ms. Keil throughout her incarceration."

5. "The failure of Missouri Department of Corrections [sic] and its agents to assess and act upon her complaints and those of other inmates, contributed to the increase in substantiated staff sexual misconduct and staff sexual harassment and caused additional offenders to suffer needlessly."

---

[1] Thus, the only remaining Defendants are Bearden and various John and Jane Does; the deadline to amend the pleadings to identify any of these individuals has passed. (Doc. 54, p. 1.)

2

Case 5:18-cv-06074-BP   Document 134   Filed 09/29/21   Page 2 of 8

(Doc. 127-2, p. 4.)

Another of Plaintiff's experts is Melissa Piasecki, M.D. (Doc. 127-3 (Dr. Piasecki's report).) Dr. Piasecki is a professor of psychiatry who interviewed Plaintiff and reviewed other material in the Record to assess what psychological damage Plaintiff has suffered due to her alleged mistreatment at the hands of MDOC employees. (*Id.*) Dr. Piasecki's report includes fourteen opinions, which fall into the following general groups:

1. Opinions 1–4: Plaintiff was sexually assaulted by Bearden and Dunn at the Chillicothe Correctional Institute, causing her pain and anxiety.

2. Opinions 5–8: Due to Plaintiff's status as a prisoner and the authority Bearden and Dunn had over her, the assaults were especially psychologically damaging.

3. Opinions 9–11: Plaintiff now suffers PTSD due to the alleged assaults, which impair her functioning and happiness.

4. Opinions 12–14: Plaintiff will require ongoing therapy to recover from these experiences.

(Doc. 127-3, pp. 4–5.)

Now, Defendant has filed a Motion to Exclude Drs. Schriro's and Piasecki's testimony. (Doc. 126.)[2] Plaintiff opposes the motion. (Doc. 132.) The Court resolves these issues below.

## II.  DISCUSSION

"The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). An expert witness

---

[2] The Plaintiffs in all of the cases stemming from Bearden's alleged misconduct retained Drs. Schriro and Piasecki, who offered similar opinions with respect to the allegations in each case, and the various Defendants have filed motions to exclude all or part of these opinions in each case. (*See generally* Case Nos. 18-6079, 18-6103, 19-6022, and 19-6161.) In Case No. 19-6022, the Honorable Stephen R. Bough granted in part and denied in part Defendants' motion to exclude the testimony. (*See* Case No. 19-6022, Doc. 106.) For the most part, this Order tracks Judge Bough's reasoning. However, in Case No. 19-6022, Anne Precythe—the director of MDOC—is still a Defendant, while in this case, Bearden and various John and Jane Does are the only remaining defendants. This means that some of Drs. Schriro's and Piasecki's opinions may be relevant in Case No. 19-6022, but no longer relevant in this case, as discussed in more detail below.

may offer an opinion on an issue if the expert possesses "knowledge, skill, experience, training, or education," and if the opinion exhibits four qualities:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.  Under Rule 702(c), courts assess five factors to determine whether an expert's methodology is "reliable": (1) "whether it can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error" of the methodology; (4) "the existence and maintenance of standards controlling the technique's operation"; and (5) whether the methodology has attracted "[w]idespread acceptance" within the relevant scientific community.  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 593–94 (1993).

In addition to these requirements, "courts must be on guard against invading the province of the jury on a question which the jury [is] entirely capable of answering without the benefit of expert opinion."  *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015).  Thus, "[a]lthough an expert opinion is not inadmissible merely because it embraces an ultimate issue to be decided by the trier of fact, not all expert opinions are admissible."  *United States v. Whitted*, 11 F.3d 782, 785 (8th Cir. 1993) (citations and quotations omitted).  "Such testimony is still subject to exclusion if the subject matter is within the knowledge or experience of the jury, because the testimony does not then meet the helpfulness criterion of Rule 702."  *United States v. Arenal*, 768 F.2d 263, 269 (8th Cir. 1985).  In other words, for an expert opinion to be admissible, the opinion must be helpful to the jury due to the expert's exercise of her specialized knowledge.  With these

4

principles in mind, the Court evaluates Defendant's arguments with respect to each of Plaintiff's experts.

### a. Dr. Schriro

Defendant argues that Dr. Schriro's opinion—that Plaintiff's claims about her sexual assault by MDOC employees are "supported by the facts"—should be excluded because it merely tells the jury what result to reach, and is therefore not helpful. (Doc. 127, p. 4.) The Court agrees. The jury is "entirely capable of" deciding whether it believes Plaintiff's account of her experiences "without the benefit of expert opinion." *Am. Auto. Ins. Co.,* 783 F.3d at 725. Dr. Schriro's first opinion is therefore excluded.

In the same vein, Defendant argues that Dr. Schriro's second opinion—that Bearden had "the means and opportunity to repeatedly sexually assault and harass Ms. Keil," and that he "caused her to suffer physical and emotional injury"—is also unhelpful to the jury. (Doc. 127, pp. 4–5.) The Court agrees in part. The second part of this opinion, that Bearden "caused" Plaintiff to suffer injury, is simply a legal conclusion about an element of some of Plaintiff's claims; it therefore "embraces an ultimate issue to be decided by the trier of fact," *Whitted*, 11 F.3d at 785, without adding any insight the trier of fact could not derive for herself. However, the first part of the opinion—that Bearden had "the means and opportunity" to abuse Plaintiff—is well within the limit of Rule 702. To support this opinion, Dr. Schriro is prepared to testify that inmates "must follow the order of any correction officer," and that correction officers are aware of the location of security cameras and thus can identify places where potential victims will be vulnerable. (Doc. 127-2, p. 7.) This opinion is both within Dr. Schriro's expertise, since she formerly served as the director of MDOC, and outside most jurors' knowledge. Therefore, Dr. Schriro may testify that, in his capacity as a correction officer, Bearden was uniquely able to sexually abuse Plaintiff.

5

Dr. Schriro's third opinion asserts that Dunn also "had the means and opportunity to repeatedly sexually assault" Plaintiff, and that this "caused her to suffer physical and emotional injury." (Doc. 127-2, p. 4.) Plaintiff has apparently settled her claims with both Dunn and his employer, MHM Services, Inc., because both were voluntarily dismissed. (Docs. 72, 73.) Defendant argues that this opinion is therefore no longer relevant to any live issue, (Doc. 127, p. 5), an argument to which Plaintiff does not respond. (Doc. 132.) Because neither Dunn nor MHM Services is in the case, the Court agrees that this opinion is inadmissible.

Dr. Schriro's fourth and fifth opinions state, respectively, that MDOC and MHM Services failed to adequately protect Plaintiff during her incarceration, and that this failure enabled Bearden and others to engage in sexual misconduct. (Doc. 127-2, p. 4.) Defendant points out that (1) Plaintiff does not have a claim against MDOC or any specific MDOC employee other than Bearden, and (2) Plaintiff has settled her claim against MHM services. (Doc. 127, pp. 5–6.) As a result, Defendant argues that these opinions are no longer relevant to any live issue. (*Id*.) Plaintiff does not respond to this argument, (Doc. 132), and the Court agrees that these opinions should be excluded.

In sum, Dr. Schriro may testify, based on her experience in MDOC and her other extensive qualifications, that Bearden was in a unique position to assault and harass Plaintiff due to his position as a correction officer and her status as an inmate. She may not testify that Plaintiff's allegations are true, nor may she offer opinions on the conduct of parties who are no longer in the case.

### b. Dr. Piasecki

Defendant next argues that Dr. Piasecki's opinions two through eight should be excluded because they invade the province of the jury. (Doc. 127, p. 6.) The Court agrees in part. Dr.

Piasecki's opinions two and three state simply that Plaintiff was sexually harassed and assaulted by Bearden and Dunn while incarcerated at the Chillicothe Correctional Institution; as with Dr. Schriro's opinion, the Court finds that these opinions "merely tell the jury what result to reach" in assessing the credibility of Plaintiff's testimony, and as a result "are not admissible." *Lee v. Andersen*, 616 F.3d 803, 809 (8th Cir. 2010). Opinion four explains that Plaintiff suffered mental and physical anguish due to Bearden's and Dunn's conduct, and opinion five asserts that Plaintiff might have lost her privileges or been placed in isolation if she sought help. (Doc. 127-3, p. 2.) These opinions too are "within the knowledge or experience of the jury," *Arenal*, 768 F.2d at 269, and as such, are unhelpful.[3] Opinion eight states that Dunn's conduct was especially harmful because of his position as a mental health professional, and that due to Dunn's misbehavior, Plaintiff has difficulty trusting healthcare providers. (Doc. 127-3, p. 3.) Because Dunn is no longer in the case, the Court finds that this opinion is irrelevant to any live issue. Thus, Dr. Piasecki's testimony on opinions two through five and opinion eight is inadmissible.

However, the Court disagrees with Defendant's argument that Dr. Piasecki may not testify as to her conclusions expressed in opinions six and seven. Opinion six states that, due to the unpredictability of Bearden's assaults, Plaintiff "developed a very broad set of cues that are associated with the assaults," which is "a significant factor in the severity and generalized nature" of the mental injury Plaintiff continues to suffer. (Doc. 127-3, p. 2.) The Court finds that it is possible that, as a professor of psychiatry, Dr. Piasecki's specialized knowledge may allow her to testify that certain factors may exacerbate the mental damage a sexual assault victim experiences—

---

[3] This holding means only that Dr. Piasecki cannot testify, as an expert, that either Plaintiff's claim that Bearden's assault caused her mental distress is true or that Plaintiff, as a prisoner, could not readily escape from Bearden. But Dr. Piasecki *can* testify that Plaintiff's reaction to Bearden's alleged assault is consistent with other survivors of sexual violence, and she can rely on the *fact* that Plaintiff was a prisoner to support her analysis of why Plaintiff may not have reported the assaults (assuming, of course, that Plaintiff lays a foundation for her expertise in these areas). In other words, Dr. Piasecki cannot simply endorse Plaintiff's claims about what occurred between herself and Bearden.

and in particular, that the manner in which Bearden sexually assaulted Plaintiff was uniquely damaging to Plaintiff's psyche. Such testimony would be well within Dr. Piasecki's uncontested expertise, and could help the jury assess Plaintiff's damages. Similarly, opinion seven states that Bearden's abuse of Plaintiff "altered her identity and her relationships with other inmates and jail staff." (Doc. 127-3, pp. 2–3.) Dr. Piasecki's specialized knowledge of psychiatry may allow her to testify about the effect of Bearden's conduct on Plaintiff's relationships with other inmates; this issue is not necessarily one "which the jury [is] entirely capable of" assessing on its own "without the benefit of expert opinion." *Am. Auto. Ins. Co*., 783 F.3d at 725.

In sum, Dr. Piasecki may testify as to the effects of Bearden's abuse on Plaintiff's psyche and relationships. She may not testify that Plaintiff's allegations are true, nor may she offer opinions on the conduct of parties who are no longer in the case.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude, (Doc. 126), is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

DATE: September 29, 2021

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT