# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | | |
|---|---|---|
| KAREN BACKUES KEIL, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 18-06074-CV-SJ-BP |
| | ) | |
| EDWARD BEARDEN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL AND GRANTING PLAINTIFFS' MOTION FOR FEES AND COSTS

In this case, four separate suits brought by four Plaintiffs—Karen Keil, Ashley Zieser, Lynnsey Betz, and Trenady George[1]—against Defendant Edward Bearden were consolidated for trial. All four Plaintiffs raised similar allegations against Defendant, namely, that Defendant sexually assaulted them while they were prisoners and he was a prison guard at the Chillicothe Correctional Center ("Chillicothe"). A jury found Defendant liable on all of Plaintiffs' claims and awarded compensatory and punitive damages for each Plaintiff. At the request of the parties, post-trial proceedings were consolidated, (*see* Doc. 205), and now, both parties have filed post-trial motions. Specifically, Defendant has filed a Motion for a New Trial, (Doc. 211), and Plaintiffs have filed a Motion for Attorney Fees, (Doc. 206), as well as two bills of costs. (Docs. 208, 217.) The Court resolves these issues below.

---

[1] Until relatively recently, the parties referred to George as "Jane Doe"; any mention of "Doe" in this case is a reference to George.

## I.  BACKGROUND[2]

Keil, Zieser, Betz, and George are all convicted felons who, at some point in the past decade, were incarcerated at the Chillicothe Correctional Center ("Chillicothe"), a Missouri state prison.  Defendant served as a corrections officer at Chillicothe until his retirement.  Beginning in 2018, all four Plaintiffs brought cases under 42 U.S.C. § 1983 alleging that Defendant sexually assaulted them while they were in prison, violating their constitutional right to bodily integrity.  (*See* Case Nos. 18-6074, 18-6079, 18-6103, and 19-6161.)  A fifth woman, Teri Dean, also filed a suit raising similar claims against Defendant; Dean's case is currently pending before the Eighth Circuit.  (*See* Case No. 19-6022.)

The Court consolidated all five cases for discovery, (Doc. 77), which proceeded for several years.  Then, in November 2021, the Court consolidated the four cases at issue here for trial, over Defendant's opposition; the Court did not consolidate Dean's case, since it was on appeal.  (Doc. 139.)  The Court reasoned that given the significant factual overlap among the cases, having four separate trials would be inefficient.  (*Id*.)  The Court also observed that because FED. R. EVID. 415(a) permits witnesses in sexual assault cases to testify about previous, unrelated sexual assaults allegedly committed by the defendant, consolidating the cases would not significantly change the testimony Plaintiffs would offer against Defendant.  (*Id*.)

The jury trial occurred between April 25 and April 28, 2022.  At the trial, all four Plaintiffs testified that Defendant had sexually assaulted them while they were in Chillicothe, although the manner of the assaults and the number of occasions on which it occurred varied between the Plaintiffs.  There was no direct evidence of the assaults aside from Plaintiffs' testimony.  Plaintiffs

---

[2] Given the procedural posture, the evidence is stated in the light most favorable to the jury's verdict.  The Court has not provided citations for facts that were not seriously disputed at trial or that are not related to the arguments presented by Defendant's post-trial motions.

also presented two expert witnesses: Dr. Dora Schriro, a former director of the Missouri Department of Corrections who testified about the means and opportunity a corrections officer would have to sexually assault prisoners, and Dr. Melissa Piasecki, a psychiatrist who testified about the ongoing mental and emotional damage Defendant's actions caused for Plaintiffs. In Defendant's case, he took the stand and testified that not only did he never sexually assault any of the Plaintiffs, but that he did not engage in any sexual behavior (consensual or otherwise) with them, and that their allegations were entirely false. (*E.g.,* Doc. 222, pp. 277, 280, 285–87 (Trial Tr., pp. 684, 687, 692–94).)[3]

Two aspects of the testimony at trial are of note with regard to Defendant's motion for a new trial. First, Plaintiff George testified that Defendant provided her with a cell phone number, and when she did not call the number, approached her in the prison yard and said "I have not received that phone call yet," which George interpreted as a "threat that I better make the telephone call." (Doc. 221, p. 45 (Trial Tr., p. 148) (George's testimony).) George subsequently called the number and had a conversation with Defendant. (*Id*. at p. 51 (Trial Tr., p. 154).) At trial, George testified that Defendant had mentioned George's children and attempted to discuss George's plans once she was released from prison during the call; she also admitted that she had misstated some of the contents of the call at her deposition. (*Id*. at p. 53 (Trial Tr., p. 156).) Defendant also discussed the telephone call with George during his testimony. He admitted that providing an inmate with his personal phone number was a violation of prison rules, and that he had in fact purchased a "burner" cell phone on which to receive the call. (Doc. 222, p. 261 (Trial Tr., p. 668) (Defendant's testimony).) Defendant also admitted that he discussed George's children during the

---

[3] All page numbers are those generated by the Court's CM/ECF system and may not match a document's internal pagination.

call. (*Id*. at p. 269 (Trial Tr., p. 676).) He claimed, however, that the purpose of the call was to "help" or "counsel" George, a job Defendant conceded that he "was not qualified for." (*Id*.)

Second, Zieser and Betz also provided some concrete details regarding the place and time of their assaults; specifically, Zieser accused Defendant of assaulting her during an evening shift in December 2015 or January 2016, (Doc. 220, pp. 80–81 (Trial Tr., pp. 80–81) (Zieser's testimony)), and Betz accused Defendant of assaulting her in the vocational education building during a two-week period in 2016. (Doc. 221, pp. 247–51 (Trial Tr., pp. 350–54) (Betz's testimony).) Defendant introduced shift supervisor logs suggesting that it was unlikely that he would have been working during those shifts and/or in those areas of the prison at the relevant time. However, there was also evidence that Defendant often worked overtime, including at least one evening shift in December 2015, (Defendant's Exhibit 5, p. 39), and that on at least one day, Defendant was working in the vicinity of where Betz alleges she was assaulted during the two-week period at issue. (Doc. 223, p. 61 (Trial Tr., p. 760) (testimony of David Savage, Chief of Custody at Chillicothe).) Additionally, there was evidence that corrections officers do not always work in the time and place they are supposed to. (*Id*. at p. 58 (Trial Tr., p. 757) ("COs hang[ing] out where they're not supposed to be" has "happened before in the past").) For example, one of Defendant's witnesses discussed an incident in which two officers both left their posts for approximately twenty minutes, possibly to have a sexual liaison in the offender property room. (*Id*. at p. 66 (Trial Tr., p. 765).)

The jury ultimately found Defendant liable to all four Plaintiffs. It also awarded each Plaintiff the same amount of compensatory and punitive damages: $3.5 million in compensatory damages and $1.5 million in punitive damages, for a total of $5 million for each Plaintiff.

Now, Defendant has filed a motion for a new trial, which Plaintiffs oppose. Separately, Plaintiffs have filed a motion for attorney fees, along with two bills of costs. The Court resolves these issues below, setting out additional facts as needed.

## II. DISCUSSION

**1. Defendant's Motion for a New Trial**

Under FED. R. CIV. P. 59, a party may file a motion for a new trial within 28 days of the entry of judgment. A judge has the discretion to grant a new trial "when the outcome is against the great weight of the evidence so as to constitute a miscarriage of justice." *Bank of Am., N.A. v. JB Hanna, LLC,* 766 F.3d 841, 851 (8th Cir. 2014). "In making this determination, the district court can rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 459 (8th Cir. 2016) (cleaned up). "However, the court is not simply to substitute its judgment for the jury's, granting a new trial whenever it would find differently than the jury has. The court should reject a jury's verdict only where . . . the court is left with a definite and firm conviction that the jury has erred." *Ryan v. McDonough Power Equip., Inc.,* 734 F.2d 385, 387 (8th Cir. 1984) (quotations and citations omitted); *see also Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 869 (8th Cir. 2011). In addition, a new trial should be granted if there was an evidentiary error that affected a party's substantial rights in that a new trial would likely produce a different result. *E.g., Coterel v. Dorel Juvenile Group, Inc.*, 827 F.3d 804, 807 (8th Cir. 2016); *American Family Mut. Ins. Co. v. Graham*, 792 F.3d 951, 957 (8th Cir. 2015). Defendant has raised four grounds on which he believes he is entitled to a new trial. The Court evaluates each of these grounds in turn.

  a. <u>Consolidation of Cases</u>

Defendant's first argument in support of a new trial is that the consolidated trial of four cases caused confusion and unfair prejudice.  (Doc. 212, pp. 2–3.)  As the Court observed in its order consolidating these cases, FED. R. CIV. P. 42(a) provides that the Court has discretion to consolidate two or more cases that "involve a common question of law or fact."  If the Court finds that the cases share a common question, it must then balance the "convenience and economy in the administration of actions" achieved through consolidation against the danger of "inefficiency, inconvenience, or unfair prejudice to a party." *City of Creve Coeur v. DIRECTV, LLC*, 2019 WL 3604631, at *6 (E.D. Mo. Aug. 6, 2019) (citing *Enter. Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994); *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998)).  Consolidation is usually favored when two cases involve "common parties, overlapping legal issues, and related factual scenarios." *Horizon Asset Mgmt. v. H&R Block, Inc.*, 580 F.3d 755, 768 (8th Cir. 2009).  Here, given that all Plaintiffs were prisoners at the same institution and suffered the same sort of injury at the hands of the same Defendant in the same time period, this was undoubtedly a case with "common parties, overlapping legal issues, and related factual scenarios," which is why the Court made the decision to consolidate the cases for trial.

In assessing Defendant's objections to the Court's decision to consolidate the cases, the Court begins its analysis with a discussion of what was and was not at stake.  Importantly, had each case gone to trial separately, each of the Plaintiffs would have testified at one another's trials about the sexual assaults they allegedly experienced at Defendant's hands; FED. R. EVID. 415(a) provides that "[i]n a civil case involving a claim for relief based on a party's alleged sexual assault . . . the court may admit evidence that the party committed any other sexual assault . . . ."  Indeed, Dean—whose case was not consolidated for trial because it is on appeal—testified at Plaintiffs'

6

trial, and her testimony was very similar to each of the Plaintiffs' testimony, except that she did not discuss the ramifications of the assault on her mental health.

Defendant offers two reasons why he believes consolidation resulted in undue prejudice or confusion. First, he suggests that "the jury . . . [saw] each plaintiff sitting in the courtroom, reacting to the evidence, throughout the course of the trial," and argues that this played to the jurors' sympathies. (Doc. 212, p. 2.) For the reasons discussed in its order consolidating the cases for trial, the Court disagrees; it is very unlikely that simply seeing Plaintiffs sitting together in the courtroom influenced the jury, and the gains in judicial economy from consolidating the trials significantly outweighs any possible prejudice. (*See* Doc. 139.) In fact, Defendant's theory of the case was that Plaintiffs worked together to fabricate their accusations against him—and seeing the Plaintiffs together could have made that theory more credible to the jury. By the same token, had Defendant successfully impeached any one of the Plaintiffs, the jury might have been less willing to believe the other Plaintiffs. Consolidation, in other words, was a double-edged sword which could have benefitted either party.[4]

Second, Defendant argues that consolidating the cases for trial risked the jury confusing "which allegations fit with which plaintiff." (Doc. 212, p. 3.) The Court disagrees. Each Plaintiff testified separately; each Plaintiff's allegations were different from the other Plaintiffs; Defendant's attorneys were able to cross-examine each Plaintiff; Dr. Piasecki discussed the impact of the assaults on each Plaintiff's mental state separately; Defendant was able to introduce evidence to undermine the credibility of the allegations of specific Plaintiffs, as when he introduced the shift

---

[4] In his reply, Defendant suggests that "the plaintiffs—at times dramatically—reacted to the testimony," including an instance where "one of the plaintiffs had an outburst during the testimony of plaintiffs' expert about the damages *of a different plaintiff*." (Doc. 218, p. 1 (emphasis in original).) As the Court recalls, Zieser began crying quietly and excused herself for a period of time during Dr. Piasecki's testimony. The Court does not believe any of the Plaintiffs behaved inappropriately, and finds it unlikely that any of Plaintiffs' behavior influenced the outcome of the trial.

7

supervisor logs to cast doubt on Zieser's and Betz's testimony; the jury instructions expressly provided that the jury should evaluate the elements of each Plaintiff's claim separately; and the Court provided the jury with separate verdict forms for each Plaintiff. *E.g., Mary Ellen Enterprises v. Camex, Inc.*, 68 F.3d 1065, 1072 (8th Cir. 1995) (minimal risk of jury confusion where the instructions and verdict forms "clearly differentiated between" separate claims).[5] Thus, the Court does not believe the consolidation of the cases resulted in any significant confusion by the jury.

    b. <u>Exclusion of Plaintiff's Exhibit 12</u>

Defendant's next argument is that the Court erred in excluding Plaintiffs' Exhibit 12—the recording of the telephone call between George and Defendant—when Defendant attempted to introduce that recording during his redirect examination. (Doc. 212, pp. 3–5.) Both George and Defendant had discussed the call during their testimonies, and arguably characterized it somewhat differently; Defendant now argues that in the aftermath of Plaintiffs' cross-examination of him regarding the call, "it became more important for the jury to hear the content of the call, as well as [Defendant's] and [George's] tone during the call." (Doc. 212, p. 5.)

Defendant could have used Plaintiffs' Exhibit 12, the recording of the call, in two ways: (1) in examining Defendant, to support his characterization of the call, or (2) in examining George, to dispute *her* characterization of the call. But the Federal Rules of Evidence indicate that only the second use is permissible. Several of the Rules of Evidence are pertinent to this issue. FED. R. EVID. 801(d)(1) provides that prior consistent statements by a declarant witness are admissible only where the "declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . is offered (i) to rebut an express or implied charge that the declarant recently

---

[5] Defendant argues that at one point in her closing argument, one of Plaintiffs' attorneys confused Zieser and George. (Doc. 218, p. 2.) While this may be true, the Court does not believe that it illustrates a high danger of prejudicial confusion; indeed, Plaintiff's counsel admitted the error and clarified the issue in her rebuttal. (Doc. 223, p. 134 (Trial Tr., p. 833) (Plaintiffs' closing rebuttal).)

fabricated it . . . or (ii) to rehabilitate the declarant's credibility as a witness when attacked on another ground."  The amendment notes to Rule 801(d) clarifies that the rule "does not allow impermissible bolstering of a witness"; thus, "prior consistent statements . . . may be brought before the factfinder only if they properly rehabilitate a witness whose credibility has been attacked . . . [and] the trial court has ample discretion to exclude prior consistent statements that are cumulative accounts of an event."  In the same vein, Rule 403 provides that "needlessly [] cumulative evidence" should be excluded.  And Rule 608(b) provides that a party may not admit "extrinsic evidence . . . to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness" except "on cross-examination."  Together, these rules establish a principle that extrinsic evidence is not admissible merely to support a witness's characterization of a collateral matter, unless the witness's credibility has been attacked with respect to that collateral matter.

Here, the only purpose of introducing Plaintiffs' Exhibit 12 in the redirect examination of Defendant would be to bolster the credibility of his characterization of the phone call with George—which, at that juncture, was not at issue.  Defendant had admitted that (1) he provided the cell phone number to George, which was against prison policy; (2) George called him, and he spoke with her; and (3) George's recollection of the subject matter of the conversation was generally correct.  (*See* Doc. 222, pp. 268–70 (Trial Tr., pp. 675–77) (Defendant's testimony).)  The only purpose of playing the recording of the phone call would be to either rehabilitate Defendant's credibility as to the phone call (which had not been attacked) or to expose the jury to the subject matter of the call (which was uncontested).  In the former case, the introduction of the recording would violate Rule 801(d)(1), and in the latter, the introduction would be needlessly cumulative.  *See, e.g., United States v. Wallace*, 852 F.3d 778, 784 (8th Cir. 2017) (affirming

9

exclusion of a defendant's videotaped statement because, although the defendant argued it "would have given the jury the opportunity to see her demeanor, body language, and mannerisms," it was needlessly cumulative). Consequently, the Court finds that it did not err in preventing Defendant from introducing Plaintiff's Exhibit 12 in the manner in which he attempted to introduce it.

The Court also notes that Defendant could have re-called George in his case-in-chief and asked her specific questions about the phone call, and, to the extent her answers were inconsistent with the recording, used the recording to impeach her. This would not have violated Rule 801(d)(1), which expressly provides that a witness can be cross-examined on specific instances of *un*truthfulness. Indeed, both the Court and even Plaintiffs' counsel suggested that Defendant could have used Plaintiffs' Exhibit 12 to impeach George, had he laid a proper foundation. (*See* Doc. 223, pp. 11–13 (Trial Tr., pp. 710–12) (conference with the parties).) This renders harmless any error in refusing to admit the recording in the manner in which Defendant proposed to admit it.

Independently, even if the exclusion of Plaintiff's Exhibit 12 was erroneous, an evidentiary error is grounds for a new trial only if a new trial without the evidentiary error would likely produce a different result. *E.g., Coterel*, 827 F.3d at 807. Here, for numerous reasons, the exclusion of Plaintiff's Exhibit 12 likely did not influence the outcome. First, Defendant did not testify that he had a consensual sexual relationship with George (or any of the Plaintiffs, for that matter)—he testified that their claims that he engaged in sexual misconduct with them were entirely fabricated. (*E.g.,* Doc. 222, pp. 277, 280, 285–87 (Trial Tr., pp. 684, 687, 692–94).) Thus, the mere fact that Defendant engaged in inappropriate personal contact with one of the Plaintiffs suggested a willingness to overstep his bounds in his relationships with female prisoners, regardless of the nature and tone of that contact. Second, both Defendant and George agreed as to the basic content of the phone call; having reviewed a transcript of the call, the Court does not believe that hearing

10

the recording would have significantly aided or changed the jury's understanding of what occurred. Third, the jury believed the testimony of several Plaintiffs other than George, including Keil and Zieser, who had virtually no extrinsic evidence to support their claims. Even if the extrinsic evidence supporting George's claim—namely, the telephone call—were not as damning as the jury could have inferred from the parties' testimony about it, there is nothing to suggest that the jury would have disbelieved George's basic account of her assaults at Defendant's hands. *See Wallace*, 852 F.3d at 784 ("It is far from certain that seeing another version of [the telephone call] . . . would have caused the jury to discredit [George]."). In sum, the Court finds that the exclusion of Plaintiff's Exhibit 12 is not grounds for a new trial.

    c. <u>Weight of the Evidence</u>

Defendant also contends that the verdict, as a whole, was against the weight of the evidence. (Doc. 212, p. 5.) Specifically, Defendant indicates that while Plaintiffs offered "just their testimony about their allegations," he provided "documents and other testimony to disprove the plaintiffs' allegations when faced with a concrete date range and location." (Doc. 212, pp. 5–6.) For example, Defendant suggests that he disproved Zieser's claim that he assaulted her during an evening shift in December 2015 or January 2016 by showing that he did not work the evening shift during that period, and that he disproved Betz's claims that he assaulted her during a two-week period in 2016 by introducing shift supervisor logs showing his location during that period. (Doc. 212, p. 6.)

The Court does not believe that the jury's verdict was against the weight of the evidence. While the Court can "weigh the evidence" upon a party's motion for a new trial, *e.g., Lincoln Composites, Inc.*, 825 F.3d at 459, it cannot "simply [] substitute its judgment for the jury's . . . [and can] reject a jury's verdict only where . . . the court is left with a definite and firm conviction

that the jury has erred." *Ryan*, 734 F.2d at 387 (8th Cir. 1984) (quotations and citations omitted). Here, all four Plaintiffs offered similar testimony about how Defendant approached, groomed, and sexually assaulted them; their testimony was credible and reasonably detailed, and the Court certainly lacks a "definite and firm conviction that the jury has erred" in believing Plaintiffs rather than Defendant. Defendant invites the Court to "disbelieve the plaintiffs' testimony," (Doc. 212, p. 6), but to do so would be to "usurp the functions of the jury, which weighs the evidence and credibility of witnesses." *Boessing v. Hunter*, 540 F. 3d 886, 890 (8th Cir. 2008).

Moreover, the Court does not believe that the "documents and other testimony" Defendant offered to disprove Plaintiffs' allegations was especially persuasive. With respect to Zieser, Defendant argues that he never worked in the evening after January 2014, (Doc. 212, p. 6), and therefore cannot have assaulted Zieser during an evening shift in December 2015 or January 2016. But as Plaintiffs point out, Defendant often worked overtime; for example, Defendant's Exhibit 5 shows that Defendant worked several hours of overtime on the evening of December 20, 2015. (Defendant's Exhibit 5, p. 39.) With respect to Betz, Defendant argues that he did not work in the vicinity of Betz during the two-week window she identified as when the assault occurred, (Doc. 212, p. 6); yet Defendant's own witness conceded that there was one day during that period where Defendant was working near Betz. (Doc. 223, p. 61 (Trial Tr., p. 760) (testimony of David Savage, Chief of Custody at Chillicothe).) In sum, while this evidence may have supported Defendant's theory of the case, it certainly did not "disprove" Plaintiffs' allegations, nor did it shift the weight of the evidence so as to necessitate a new trial.

    d. <u>Amount of Damages</u>

Defendant also requests a new trial, or remittitur, based on the amount of damages the jury awarded to each plaintiff. (Doc. 212, pp. 6–7.) Remittitur or a new trial is appropriate only if, in

the context of the case, the verdict "is so grossly excessive that 'there is plain injustice or a monstrous or shocking result.'" *Eckerberg v. Inter-State Studio & Publishing Co.*, 860 F.3d 1079, 1088 (8th Cir. 2017) (quoting *Hudson v. United Sys. of Ark., Inc.*, 709 F.3d 700, 705 (8th Cir. 2013)).

Defendant's argument appears to have two components. First, Defendant suggests that the awards to each Plaintiff—$3.5 million in compensatory damages—were, in and of themselves, "grossly excessive." (Doc. 212, p. 7.) The Court disagrees. Each Plaintiff testified that she suffered fear and pain during the assaults, and intense psychological distress and interpersonal dysfunction thereafter. Dr. Piasecki, a psychiatrist, also testified about the long-term, irrevocable effects of suffering sexual assault by a corrections officer in a prison environment. Damage awards relating to a plaintiff's alleged pain, suffering, and mental anguish are "highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms." *Frazier v. Iowa Beef Processors, Inc.*, 200 F.3d 1190, 1193 (8th Cir. 2000). Given the harrowing experiences the Plaintiffs described, the Court finds that the jury appropriately exercised its discretion in awarding $3.5 million in compensatory damages to each Plaintiff.

Defendant also contends that the very fact that the jury awarded the same amount of money to each Plaintiff, despite the fact that the Plaintiffs allegedly experienced different forms and quantities of sexual violence at Defendant's hands, demonstrates that the damages awards are unreasonable. (Doc. 212, p. 7.) The Court disagrees. While there were differences in the details of what Plaintiffs experienced, the basic fact underlying their claims is the same: that Defendant sexually assaulted them while they were inmates at Chillicothe. As the Eighth Circuit has observed, "[t]here is no precise or exact measuring stick for calculating general damages for pain

and suffering." *Taken Alive v. Litzau*, 551 F.2d 196, 198 (8th Cir. 1977). A jury could reasonably have concluded that, having suffered the same basic harm, each Plaintiff was entitled to the same compensatory damage award. For these reasons, neither remittitur nor a new trial is warranted.

2. **Plaintiffs' Requests for Fees and Costs**

Plaintiffs have filed a motion for attorney fees and expenses, as well as a bill of costs and a supplemental bill of costs. (Docs. 206, 208, 217.) As referenced above, Plaintiffs brought their claims under 42 U.S.C. § 1983, which is a civil rights statute. 42 U.S.C. § 1988 provides that the "prevailing party" in a civil rights action may recover "a reasonable attorney's fee." To "prevail," in this context, means to obtain "actual relief on the merits of [the plaintiff's] claim [which] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992). To determine whether a fee is "reasonable," "the ordinary starting point . . . is multiplying the number of hours reasonably expended by a reasonable hourly rate." *Emery v. Hunt*, 272 F.3d 1042, 1046 (8th Cir. 2001). Additionally, FED. R. CIV. P. 54(d)(1) provides that "costs—other than attorney's fees—should be awarded to the prevailing party" as well, and Local Rule 54.1 indicates that "[a] party seeking an award of costs must file a verified bill of costs, on the form provided by the Clerk." Defendant has objected in part to Plaintiff's request for attorney fees, but has not objected to either bill of costs. The Court discusses its allocation of fees and costs below.

a. <u>Fees</u>

Five attorneys were involved in this case on behalf of Plaintiffs: John Ammann, Susan McGraugh, Brendan Roediger, Ryan Gavin, and Jenifer Snow. (*See* Doc. 207-1, p. 2 (summarizing Plaintiffs' fee requests).) Plaintiffs have documented the hours each of these attorneys spent on the consolidated cases, and requested an hourly rate of $450 for Ammann and

14

McGraugh; $425 for Gavin; $400 for Roediger; and $375 for Snow. Defendant filed a response to Plaintiffs' motion, indicating that he opposes specific time entries from the attorneys, but not the bulk of the requested award. (Doc. 210.) In response, Plaintiffs agreed to deduct the time entries Defendant identified, and also requested additional fees reflecting the time their attorneys spent in litigating the post-trial motions in this case. (Doc. 216, p. 4.)[6] The Court believes that the total hours Plaintiffs' attorneys spent on this case, as well as the proposed hourly rates, are reasonable given the scope and complexity of the case and the skill and experience of the attorneys, as well as the extremely positive result they obtained for their clients. Consequently, Plaintiffs' motion for attorney fees is, generally, **GRANTED.**

However, the Court is uncertain about some of the calculations underlying the final totals requested in Plaintiffs' reply suggestions; those totals appear to reflect both the hour subtractions requested by Defendant, and the hour additions requested by Plaintiffs for post-trial work. But the reply does not break down the numbers by attorney, case, and number of hours, and as a result, the basis for Plaintiffs' calculations is somewhat unclear. The Court has attempted to perform the calculations on its own, and has reached slightly different totals from Plaintiffs, although the difference is relatively insignificant: Plaintiffs' reply requests $126,167.50, $93,152.50, $93,680.00, and $92,597.50 in attorney fees (after performing the necessary subtractions and additions) in the *Keil, Betz, Zieser,* and *George* cases, respectively, for a total of $405,597.50. The Court has calculated a slightly different number, a total of $405,297.50, divided between the cases as follows:

---

[6] For reasons that are unclear to the Court, Plaintiffs filed their reply brief under seal, without first obtaining permission from the Court. In light of the public's right of access to judicial proceedings, documents may be filed under seal only upon a motion by the filing party demonstrating that the document contains sensitive and confidential information. *E.g., IDT Corp. v. eBay, Inc.*, 709 F.3d 1220, 1223 (8th Cir. 2013). Consequently, within seven days of the entry of this order, any party who wishes Plaintiffs' reply suggestions to remain under seal shall file a status report indicating the reason why they believe the document should remain sealed; otherwise, it shall automatically be unsealed.

- *Keil*: $126,276.25
- *Betz*: $93,141.25
- *Zieser*: $93,293.75
- *George*: $92,586.25

These totals reflect the hours billed in each individual case, plus a quarter of the hours billed in the consolidated case. A more detailed breakdown, setting out the hours billed by each attorney in each case, and reflecting both the subtractions and the additions requested by the parties in their briefing, is attached to this Order as Appendix A.[7]

Obviously, the Court is less familiar with this case, and in particular the billing details, than are the parties. Consequently, if either party believes the Court has made an error in its calculations, that party may file a supplemental brief indicating the error within fourteen days.[8] Otherwise, Plaintiffs shall be awarded a total of $405,297.50 in attorneys fees, divided between the cases in the manner described above.

In addition, Plaintiffs documented a total of $5,014.52 in expenses incurred by Ammann, McGraugh, Roediger, and Snow in conducting discovery and preparing for trial. (*See* Doc. 207-1, p. 3.) Plaintiffs' request for these expenses is granted, and Plaintiffs are awarded $5,014.52 in expenses, to be divided evenly between the cases.

---

[7] The Court believes it is important to retain such a breakdown because, although it is unlikely, it is not impossible that the verdict in favor of some but not all of the Plaintiffs could be reversed on appeal.

[8] One source of the discrepancy is this: although Plaintiffs did not oppose any of Defendant's requested subtractions from Snow's hours, Plaintiffs listed the number of subtracted hours as 8.6, whereas the Court has identified 8.8 hours of disputed entries in Defendant's motion. Another is this: Plaintiffs appear to have subtracted the 3.3 hours of Roediger's time that Defendant disputed from the consolidated case, whereas the Court believes those hours should have been subtracted equally from the Betz and Zieser cases. (*See* Doc. 210, p. 4 (explaining Defendant's objection).) But neither of these discrepancies appears to account for the differences between the Court's calculation and Plaintiffs'.

16

b. Costs

Plaintiffs have submitted two bills of costs, one of which reflects costs through the trial, and the other of which reflects costs incurred in the post-trial litigation. The first seeks a total of $12,487.60, or $3,121.90 per Plaintiff. (Doc. 208, p. 1.) The second seeks a total of $722.65, or $180.66 per Plaintiff. (Doc. 217, pp. 1–2.) Both bills of costs are accompanied by appropriate receipts, and Defendant did not file objections to either. Consequently, Plaintiffs' request for costs is granted, and Plaintiffs are awarded $13,210.25 in costs, to be divided evenly between the cases.

### III.  CONCLUSION

For the foregoing reasons, Defendant's Motion for a New Trial, (Doc. 211), is **DENIED**, and Plaintiffs' Motion for Attorney Fees, (Doc. 206), and requests for costs, (Docs. 208, 217) are **GRANTED**.

**IT IS SO ORDERED.**

DATE: July 6, 2022

 /s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT